J-A26037-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: ESTATE OF SARAH ANN WEIBLEY BENNER, AN ALLEGED INCAPACITATED PERSON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: DAVID K. WEIBLEY | No. 1772 MDA 2016 |

Appeal from the Order Entered October 18, 2016
in the Court of Common Pleas of Cumberland County
Orphans' Court at No(s): 21-16-0711

BEFORE:  BOWES, J., OLSON, J., and RANSOM, J.

MEMORANDUM BY RANSOM, J.:                     **FILED JANUARY 11, 2018**

Appellant, David K. Weibley, appeals from the order entered October 18, 2016, finding Sarah Ann Weibley Benner to be a totally incapacitated person and appointing her mother, Kimberly J. Hessbruegge, to act as a plenary guardian of her person.  We affirm and deny Appellant's application to correct the original record.[1]

_____

[1] In March 2017, Appellant filed an application to correct the record pursuant to Pa.R.A.P. 1926, seeking to have his pre-hearing memorandum added to the certified record.  **See** Application, 3/8/17, at 1-6.  The trial court responded that it did not consider Appellant's pre-hearing memorandum in reaching its decision, as it was a self-serving statement by Appellant's counsel as to what she thought the evidence would show, and for those reasons, the court did not make the application part of the record.  **See** Response, 3/31/17, at 1.  In April 2017, a motions panel denied the application without prejudice for Appellant to renew his request before the merits panel.  **See** Order, 4/18/17, at 1.

We adopt the following statement of facts from the trial court's opinion, which in turn is supported by the record. **See** Trial Court Opinion (TCO), 2/21/17, at 1-3. Ms. Weibley Benner is a nineteen-year-old woman diagnosed with Down Syndrome, cystic fibrosis, and other serious health conditions. In June 2016, two months prior to Ms. Weibley Benner's eighteenth birthday, Ms. Hesbruegge commenced the instant action by filing a petition to appoint a guardian of Ms. Weibley Benner's person and estate.

In July 2016, the court issued a rule to show cause why Ms. Weibley Benner should not be adjudged an incapacitated person and appointed Mark Bayley, Esquire, to serve as Ms. Weibley Benner's attorney. An evidentiary hearing was held in October 2016. As a result of testimony and evidence introduced at that hearing, the court made the following findings:

> [Ms. Weibley Benner] requires extensive treatment and monitoring, as well as life-saving medications and frequent assessments by various specialists.
>
> [Ms. Weibley Benner]'s intellectual abilities are significantly limited. Her IQ is a mere [forty] compared to an average IQ of one hundred . . . She essentially functions at the level of a [five-year-old] child. Accordingly, [Ms. Weibley Benner] is unable to comprehend complex issues. She will drop her head without any further response when faced with anything that requires an answer of more than [one or two] words. She is unable to perform the necessary activities of daily living without prompting from a caregiver. She is also unable to effectively receive, understand and evaluate information, or to make sound decisions, regarding her medical care. Neither can she understand the need for her medications, nor is she able to self-administer those medications without oversight and prompting. She is also limited in her ability to ensure her own well-being and safety. Finally, she is totally incapable of managing her own finances.

[Ms. Weibley Benner] has primarily resided with her mother since 2013. She visits periodically with her father, pursuant to previous custody orders. According to [Ms. Weibley Benner]'s pediatrician, her mother has a good understanding of [Ms. Weibley Benner]'s limitations and needs. [Ms. Weibley Benner]'s father admitted that he failed to abide by certain provisions of the custody orders requiring both parents to work together on [Ms. Weibley Benner]'s behalf.

At the hearing, [Ms. Weibley Benner]'s counsel stated that he was unable to give his client's position because of her inability to understand the nature of the proceedings. He further stated that he felt a plenary guardian was needed because of her incapacitation.

*See* TCO at 1-3 (internal citations to the record omitted). Following the hearing, the court granted Ms. Hesbruegge's petition and appointed her the plenary guardian of Ms. Weibley Benner's estate.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court issued a responsive opinion.

On appeal, Appellant raises five questions for our review:

1. Was there clear and convincing evidence to support the Orphans' Court determination that Sarah Ann Weibley Benner is totally incapacitated and in need of a plenary guardian of her person and estate?

2. Did the Orphans' Court err by failing to make specific findings of fact as required by 20 Pa.C.S. § 5512.1(a)?

3. Did the Orphans' Court err by failing to provide a meaningful hearing on the issue of whether Ms. Weibley Benner was incapacitated, whether she needs a guardian, and the terms of any guardianship order?

- 3 -

4. Assuming *arguendo* that Ms. Weibley Benner is either totally or partially incapacitated, did the Orphans' Court err in failing to consider less restrictive alternatives?

5. Did the Orphans' Court err by failing to ensure that Ms. Weibley Benner received adversarial legal representation?

Appellant's Brief at 5 (answers omitted).[2]

When reviewing a decree entered by the Orphans' Court,

this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Estate of Rosser*, 821 A.2d 615, 618 (Pa. Super. 2003) (internal quotation marks and citations omitted); *see also Estate of Haertsch*, 649 A.2d 719, 720 (Pa. Super. 1994) (noting that appointment of a guardian is within the sound discretion of the trial court).

Appellant first contends that there was not clear and convincing evidence to support the trial court's determination that 1) Ms. Weibley Benner is totally incapacitated and 2) that Ms. Weibley Benner is in need of a plenary guardian of her person and estate.[3] *See* Appellant's Brief at 34-35. Appellant

---

[2] The argument section of Appellant's brief does not address the above questions in the order they are numbered. We will nevertheless address them in the order presented.

[3] The trial court suggests that Appellant did not raise these issues at the hearing but does not find that he has waived them pursuant to Pa.R.A.P. 302.

argues that testimony introduced at the hearing established that Ms. Weibley Benner is capable of learning new skills that could change her capacity assessment and that a plenary guardianship is not the least restrictive alternative that could protect her interests. *Id.* at 35-39.

The Pennsylvania Estates and Fiduciaries Code defines an "incapacitated person" as

> an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety.

20 Pa.C.S. § 5501. The finding may be as to either financial resources *or* physical health and safety. *See Syno v. Syno*, 594 A.2d 307, 310 (Pa. Super. 1991).

A person is presumed to be mentally competent; the burden of proving otherwise is on the petitioner by clear or convincing evidence. *See In re Hyman*, 811 A.2d 605, 608 (Pa. Super. 2002); *see also* 20 Pa.C.S. § 5511(a). Clear and convincing evidence "is the highest burden in our civil law and requires that the fact-finder be able to come to clear conviction, without hesitancy, of the truth of the precise fact in issue." *In re estate of Heske*,

---

*See* Pa.R.A.P. 302 (noting that issues not raised in the lower court are waived for purposes of appeal). While a party must make a timely and specific objection at the appropriate stage of the proceedings to preserve an issue for review, we find that Appellant's 1925(b) is sufficient to preserve a general challenge to the trial court's determinations at a final hearing. Accordingly, we will also decline to find waiver in this instance.

647 A.2d 243, 244 (Pa. Super. 1994) (internal citations and quotations omitted).

The court may appoint a plenary guardian only upon finding that the person is totally incapacitated and in need of such services. *See* 20 Pa.C.S. § 5512.1(c). The statute provides that, to establish incapacity,

> the petitioner must present testimony, in person or by deposition from individuals qualified by training and experience in evaluating individuals with incapacities of the type alleged by the petitioner, which establishes the nature and extent of the alleged incapacities and disabilities and the person's mental, emotional and physical condition, adaptive behavior and social skills. The petition must also present evidence regarding the services being utilized to meet essential requirements for the alleged incapacitated person's physical health and safety, to manage the person's financial resources or to develop or regain the person's abilities; evidence regarding the types of assistance required by the person and as to why no less restrictive alternatives would be appropriate; and evidence regarding the probability that the extent of the person's incapacities may significantly lessen or change.

20 Pa.C.S. § 5518. When determining incapacity, the court should consider and make specific findings of fact concerning the following factors:

> (1) The nature of any condition or disability which impairs the individual's capacity to make and communicate decisions.
>
> (2) The extent of the individual's capacity to make and communicate decisions.
>
> (3) The need for guardianship services, if any, in light of such factors as the availability of family, friends and other supports to assist the individual in making decisions and in light of the existence, if any, of advance directives such as durable powers of attorney or trusts.

(4) The type of guardian, limited or plenary, of the person or estate needed based on the nature of any condition or disability and the capacity to make and communicate decisions.

(5) The duration of the guardianship.

(6) The court shall prefer limited guardianship.

20 Pa.C.S. § 5512.1(a).

In the instant matter, the evidence was sufficient to support the court's determination that Ms. Weibley Benner was totally incapacitated with respect to her ability to manage her financial resources and her ability to meet the essential requirements for her physical health and safety, which the court stated on the record following the testimony of two expert witnesses and Ms. Weibley Benner's school teacher. *See* 20 Pa.C.S. § 5512.1(a). The court found that due to Ms. Weibley Benner's developmental disabilities, she was unable to receive and evaluate information or communicate decisions, and was unable to manage her financial resources or meet essential requirements for her health and safety.

Ms. Weibley Benner functions at approximately the level of a five-year-old child. Her adaptive functioning is not likely to significantly improve and, as time goes on, will likely decline. Ms. Weibley Benner speaks in one to two word responses, and will not respond if she is feeling anxious, shy, or unfamiliar with the person to whom she is speaking.

She is unable to understand complex issues and perform the necessary activities of daily living without prompting from a caregiver, though she has shown improvement by following routines with trusted caretakers. Further,

she has complex medical needs which include taking twelve medications several times a day, regular monitoring by doctors, and the potential for open heart surgery in her future. Based upon Ms. Weibley Benner's level of cognitive function, she is not able to effectively receive, understand, evaluate, or make sound decisions regarding her care. While she may verbally identify her medications, she cannot understand the need for them or self-administer the medications without oversight or prompting. She is not always able to communicate to her teacher when she is not feeling well. Further, Appellant's expert witness admitted that Ms. Weibley Benner cannot give informed consent to surgery, or execute a power of attorney. Ms. Weibley Benner can assist in cooking a meal, but is unable to cook and feed herself if left to her own devices. She does not understand why she needs to eat or how to construct a well-balanced diet. Due to her compliant nature, she is limited in her ability to ensure her safety and well-being.

Further, Ms. Weibley Benner does not understand the concept of money and is incapable of managing her finances. She does not understand bank accounts, bills, or checks, and is only beginning to learn to identify coins. Although she is able to perform volunteer work, it is solely under intense supervision. Essentially, the testimony showed that while Ms. Weibley Benner is able to learn new skills through routine training, her ability to understand finance or complex medical issues is unlikely to improve. Accordingly, her ability to receive and evaluate information effectively and communicate decisions is unlikely to ever improve.

Thus, the court's finding of incapacity was supported by the record, including the testimony of Ms. Weibley Benner's primary care physician; two psychologists, including Appellant's expert witness; Ms. Weibley Benner's special education teacher; Ms. Hesbruegge; and Appellant himself. Accordingly, the court properly determined that Ms. Weibley Benner is incapable of managing her financial resources or to meet essential requirements for her physical health and safety. *See* 20 Pa.C.S. § 5501.

Appellant also argues that guardianship is not the least restrictive alternative for Ms. Weibley Benner's care, because she had a support network that adequately met her needs. *See* Appellant's Brief at 39-42. Appellant argues that the deficiencies in his communication with Ms. Hessbruegge is not an appropriate reason to impose a guardianship. *Id.* at 42.

The Code recognizes the legislature's intent to establish a system permitting incapacitated persons to participate as fully as possible in all decisions effecting them and accomplish the objectives of the Code through the use of the least restrictive alternative.[4] As noted above, the need for guardianship services, if any, should be evaluated "in light of such factors as the availability of family, friends and other supports to assist the individual in making decisions and in light of the existence, if any, of advance directives such as durable powers of attorney or trusts." *See In re Peery*, 727 A.2d

---

[4] We have previously observed that the least restrictive alternative concept "means that services are not provided to persons at a level that is more intensive or restrictive than is necessary for that person to live a normal life." *See Estate of C.W.*, 640 A.2d 427, 433 (Pa. Super. 1994).

539, 541 (Pa. 1999); *see also* 20 Pa.C.S. § 5512.1(a)(3). However, where the court determines, based upon clear and convincing evidence, that an individual's "ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is . . . totally unable to manage his financial resources or to meet essential requirements for his physical health and safety," the court may appoint a plenary guardian of the person and estate. *See* 20 Pa.C.S. § 5501.

Here, the court determined that Ms. Weibley Benner is an incapacitated person unable to manage her financial resources or to meet essential requirements for her physical health and safety, and this determination was supported by clear and convincing evidence. Further, the court heard extensive testimony regarding Ms. Weibley Benner's family and support system. This system included both parents and their contentious history and marked inability to co-parent. The court properly determined that a plenary guardianship was the most appropriate avenue to provide for Ms. Weibley Benner's continued care, including her schooling, living arrangements, medical appointments, and other decisions related to her day-to-day life that Ms. Weibley Benner is incapable of making for herself. Finally, a less restrictive alternative, such as a power of attorney, would not be appropriate, as Ms. Weibley Benner cannot understand the execution of such a power. Thus, a plenary guardianship was the least restrictive alternative to establish care.

Second, Appellant argues that the court did not make specific findings of fact as required by 20 Pa.C.S. § 5512.1(a). **See** Appellant's Brief at 51. Appellant contends that the court did not make separate findings regarding the factors listed in 20 Pa.C.S. § 5512.1(a), and that the court did not make separate findings regarding capacity and the need for a guardian. **Id.** at 51-52.

While the court did not, perhaps, read each finding in order, the record reflects that all six factors were considered and a finding was issued, and the record supports those findings. The court found that Ms. Weibley Benner is diagnosed with Down's Syndrome, which significantly impairs her capacity to make and communicate decisions. **See** 20 Pa.C.S. §5512.1(a)(1)-(2). Next, the court found that Ms. Weibley Benner was in need of a plenary guardianship to assist her despite her support system. **Id.** at (a)(3)-(4). As discussed *supra*, although she has a family support system, a guardianship is necessary to make decisions for her medical care and future living arrangements. Both Appellant and Ms. Hesbruegge testified about their relationship and care of Ms. Weibley Benner. The guardianship was to be indefinite in length, as Ms. Weibley Benner's condition was not likely to improve but, instead, to deteriorate as she ages. **Id.** at (a)(5). Finally, though a limited guardianship is preferred, due to the nature of Ms. Weibley Benner's intellectual disabilities, the court found a limited guardianship was not appropriate. **Id.** at (a)(6). Accordingly, we decline to find that the court abused its discretion in this instance.

- 11 -

Third, Appellant argues that the court erred by failing to provide a "meaningful hearing" on the issue of Ms. Weibley Benner's incapacity. *See* Appellant's Brief at 44. Appellant claims that despite the fact that he responded to the petition, requested a motion to continue to allow for a capacity assessment to be completed, and filed a pre-hearing memorandum, the court rushed the hearing. *Id.* at 44-45.

Appellant has waived this issue for failure to raise it before the lower court, either at the hearing, or in any other filing prior to his Pa.R.A.P. 1925(b) statement. *See* Pa.R.A.P. 302 (noting that issues not raised in the lower court are waived and cannot be raised for the first time on appeal); *see also In re S.C.B.*, 990 A.2d 762, 767 (Pa. Super. 2010) (noting that to preserve an issue for review, a party must make a timely and specific objection at the appropriate stage of the proceedings). This Court may not consider a claim which was not called to the trial court's attention at the time any error could have been corrected. *See S.C.B.*, 990 A.2d at 767. Accordingly, because Appellant did not object to the length of the hearing or to the court's alleged refusal to allow him to present further witnesses, he has waived this claim on appeal. *Id.*

Fourth, Appellant argues that the court erred in failing to consider less restrictive alternatives for Ms. Weibley Benner's care. As we have already resolved the issue of whether the court failed to consider less restrictive alternatives, we will not examine this issue further.

Finally, Appellant argues that the court erred in failing to ensure Ms. Weibley Benner received adversarial legal representation. **See** Appellant's Brief at 15. Essentially, Appellant contends that the court erred by allowing Ms. Weibley Benner's court-appointed counsel to assume the role of a guardian *ad litem* and failed to make meaningful attempts to communicate with her, failed to contact witnesses regarding her capabilities, and failed to explore less-restrictive alternatives to plenary guardianship. **Id.**

However, Appellant has waived this issue for failure to raise it before the lower court, either at the hearing, or in any other filing prior to his Pa.R.A.P. 1925(b) statement. **See** Pa.R.A.P. 302 (noting that issues not raised in the lower court are waived and cannot be raised for the first time on appeal); **see also In re S.C.B.**, 990 A.2d 762, 767 (Pa. Super. 2010) (noting that to preserve an issue for review, a party must make a timely and specific objection at the appropriate stage of the proceedings). This Court may not consider a claim which was not called to the trial court's attention at the time any error could have been corrected. **See S.C.B.**, 990 A.2d at 767; **see also** Pa.R.A.P. 302. Accordingly, because Appellant did not object to counsel's representation at the hearing or in any filings before the court, he has waived this issue for purposes of appeal. **Id.**

Application to correct the record denied.  Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/11/2018