J-A02022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: C.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.C., FATHER | : | No. 1336 MDA 2023 |

Appeal from the Order Entered August 22, 2023
In the Court of Common Pleas of Tioga County
Orphans' Court at No(s):  3 OC 2022

BEFORE:  NICHOLS, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KING, J.:                    **FILED: MARCH 25, 2024**

Appellant, J.C. ("Father"), appeals from the order entered in the Tioga County Court of Common Pleas, granting the petition of Appellee, Tioga County Department of Human Services ("DHS"), for involuntary termination of Father's parental rights to his minor child, C.C ("Child").  We affirm.

The relevant facts and procedural history of this appeal are as follows. Father and child's mother, T.T. ("Mother"), never married.  Prior to Child's birth, Father was incarcerated for approximately eight years for burglary and related offenses.  Child was born in September 2020.  At that time, Father was on parole and living with Mother and her other children.  Complicating matters, Father also faced an indicated report for sexual abuse of a minor. (*See* Findings of Fact and Conclusions of Law, filed 8/22/23, at 2).  After his birth, Child tested positive for methamphetamines.  Father claimed that he was unaware of Mother's drug use, and Mother and Father took Child home

from the hospital. Shortly thereafter, DHS filed an application for emergency protective custody. On April 28, 2021, the court granted legal and physical custody to DHS. (*Id.* at 1).

Less than a month later, Father violated his parole and was reincarcerated for using methamphetamine. Father committed a misconduct while incarcerated, and he was ineligible for parole until May 2023. (*Id.* at 2, 4). While incarcerated, Father received a service plan directing him to utilize resources that were available in prison. Specifically, the plan required Father to complete parenting programs, a drug and alcohol program, and a psychological evaluation. DHS also required Father to meet with his caseworker every two months.

The court conducted regular permanency review hearings after Father received the service plan. At each hearing, the court determined that Father was minimally compliant. In the meantime, the court adjudicated Child dependent in July 2021. On August 2, 2021, DHS placed Child into kinship care with a paternal aunt ("Aunt") and her husband ("Uncle"), where Child has remained ever since. (*Id.* at 2). Significantly, Aunt and Uncle also adopted Child's biological siblings.

On January 4, 2022, DHS filed a petition to terminate Father's parental rights. The court conducted a termination hearing on April 12, 2023. On August 22, 2023, the court entered an order terminating Father's parental

rights to Child.[1]  Father timely filed a notice of appeal and concise statement of matters complained of on appeal on September 18, 2023.

Father now raises five issues on appeal.

> Did the trial court err in finding that [DHS] established by clear and convincing evidence proper grounds for involuntary termination pursuant to 23 Pa.C.S.A. § 2511(a)(1)?
>
> Did the trial court err in finding that [DHS] established by clear and convincing evidence proper grounds for involuntary termination pursuant to 23 Pa.C.S.A. § 2511(a)(2)?
>
> Did the trial court err in finding that [DHS] established by clear and convincing evidence proper grounds for involuntary termination pursuant to 23 Pa.C.S.A. § 2511(a)(5)?
>
> Did the trial court err in finding that [DHS] established by clear and convincing evidence proper grounds for involuntary termination pursuant to 23 Pa.C.S.A. § 2511(a)(8)?
>
> Did the trial court err in failing to give primary consideration to the parent-child bond between [Father] and the minor child pursuant to 23 Pa.C.S.A. § 2511(b) and thus, erroneously terminating [Father's] parental rights?

(Father's Brief at 4-5).

Appellate review in termination of parental rights cases implicates the following principles:

> A parent's right to make decisions concerning the care, custody, and control of his or her children is among the

---

[1] Mother consented to the termination of her parental rights in April 2022, and she is not a party to the current appeal.  (**See** N.T. Termination Hearing, 4/12/23, at 1).

oldest of fundamental rights. The time-tested law of the Commonwealth requires that we balance this intrinsic parental interest within the context of a child's essential needs for a parent's care, protection, and support. We readily comprehend the significant gravity of a termination of parental rights, which has far-reaching and intentionally irreversible consequences for the parents and the child. For these reasons, the burden of proof is upon the party seeking termination to establish by clear and convincing evidence the existence of the statutory grounds for doing so. [C]lear and convincing evidence is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. Because of this serious impact attending the termination of parental rights, it is important that a judicial decree extinguishing such rights be based solely on competent evidence.

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but it does not require the appellate court to accept the [trial] court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the trial court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. However, [w]e must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re Adoption of C.M.*, ___ Pa. ___, ___, 255 A.3d 343, 358-59 (2021) (internal citations and quotation marks omitted).

DHS filed a petition for the involuntary termination of Father's parental rights on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)  General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b)  Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).  "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions."  *In re Z.P.*, 994

A.2d 1108, 1117 (Pa.Super. 2010).[2]

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of [his] parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Father's issues are related, and we address them together. Father contends that DHS did not present clear and convincing evidence to support the termination of his parental rights. Specifically, Father argues that DHS "failed to identify any **current** concerns regarding Father's care of" Child. (Father's Brief at 21) (emphasis in original). Father asserts that he was paroled in May 2023, and he is now sober, employed, and in possession of stable housing. Based upon the foregoing, Father asserts that he has remedied any causes of parental incapacity that led to Child's removal. Regarding Section 2511(b), Father insists that he presented evidence to establish his bond with Child. Despite his incarceration, Father maintains that a bond exists because Father sent letters and gifts to Child, interacted with Child through video calls, and Child calls Father "daddy." (*Id.* at 30). Father

---

[2] DHS also sought the involuntary termination of Father's parental rights under Section 2511(a)(1), (5) and (8), but we need only analyze Section 2511(a)(2) for purposes of this appeal.

- 6 -

also claims that DHS "failed to present any testimony that the severing of that bond would be in the best interest of the child." (*Id.*) For these reasons, Father concludes that the court erred and abused its discretion by terminating his parental rights. We disagree.

"The bases for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re S.C.B.*, 990 A.2d 762, 771 (Pa.Super. 2010). Under Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Z.P., supra* at 1117 (quoting *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998)).

"[I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under [Section] 2511(a)(2)[.]" *In re Adoption of S.P.*, 616 Pa. 309, 328-29, 47 A.3d 817, 828 (2012). "Each case of an incarcerated parent facing termination must be analyzed on its own facts, keeping in mind … that the child's need for consistent parental care and stability cannot be put aside or put on hold[.]" *Interest of K.M.W.*, 238 A.3d 465, 474 (Pa.Super. 2020) (*en banc*) (quoting

*In re E.A.P.*, 944 A.2d 79, 84 (Pa.Super. 2008)).

> The focus is on whether the parent utilized resources available while in prison to maintain a relationship with his or her child. An incarcerated parent is expected to utilize all available resources to foster a continuing close relationship with his or her children.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted). "Importantly, a parent's 'recent efforts to straighten out [his] life' upon release from incarceration does not require that a court 'indefinitely postpone adoption.'" *Interest of K.M.W., supra* at 474 (quoting *In re Z.P., supra* at 1125).

Under Section 2511(b), the court must consider whether termination will best serve the child's needs and welfare. *In re C.P.*, 901 A.2d 516 (Pa.Super. 2006).

> Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond.

*Id.* at 520 (internal citations omitted). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P., supra* at 1121 (internal citations omitted).

Instantly, the court received testimony from Randy Brewer, the DHS caseworker from April 2021 to November 2022. Mr. Brewer testified that Father spent most of his adult life in prison. Despite Father's reincarceration

- 8 -

in May 2021, Mr. Brewer recognized that Father attempted to comply with the service plan. Mr. Brewer indicated, however, that Father did not contact him until January 2022. Moreover, Mr. Brewer explained that Father was minimally compliant with the service plan. Although Mr. Brewer admitted he did not observe Father's video calls with Child, Mr. Brewer confirmed that Father has not served a parental role since Child was six months old. (**See** N.T. Termination Hearing at 49).

Aunt provided testimony about Child's placement. Aunt adopted Child's siblings and is amenable to adopting Child. Child is "extremely close" with his biological siblings. (**Id.** at 96). Aunt also stated that she and Uncle have a "typical parent relationship" with Child. (**Id.** at 98). Child calls Aunt "momma." (**Id.**) Aunt also reiterated that Father did not perform parental duties following his reincarceration.

In addition, Father testified in his own defense. Regarding Mr. Brewer's testimony that Father did not contact him until January 2022, Father claimed that the prison caused the delay by failing to add Mr. Brewer to Father's call list. Although Father completed a drug and alcohol program, he admitted that he failed to complete parenting classes and a psychological evaluation.[3] Father also testified that he started video calls with Child seven to eight

---

[3] Father noted, however, that he wrote multiple letters to the teacher inquiring about enrollment in the parenting class. (**See** N.T. Termination Hearing at 129).

months after his incarceration. While Father described Child as being excited to see him during the video calls, Father conceded that it was difficult to maintain their relationship through video calls. (**Id.** at 154). Father testified that he sent his first letter to Child in July 2022 and first gift to Child in September 2022. Moreover, Father acknowledged that he spent a minimal amount of time with Child since the opening of the case, and his prison misconduct effectively prevented him from parenting Child. (**Id.** at 152).

The court considered the testimony and determined that DHS provided clear and convincing evidence in support of termination.

> [Father's] role as a parent has been nearly non-existent although there is evidence of some interest. The most troubling features of Father's stated commitment to parenthood are the developments since the birth of [Child].
>
> Seven months after [Child] was born, Father received a parole violation for drugs and weapons, which means that he was engaging in the use of illegal substances. Once incarcerated, his stay was extended as a result of at least two institutional violations. Bottom line: Father has been absent for nearly 2½ years of the 3 years of this child's life.
>
> The [c]ourt concludes that Father may well be sincere in his desire to remain as [Child's] parent. Based on the pattern of Father's behaviors, the [c]ourt has no confidence that the pattern of behavior of Father will change to the degree that promotes a reunification of Father and Child.
>
> There is no question that [DHS] has demonstrated by clear and convincing evidence that the Father, for at least six months prior to the filing of the petition on January 4, 2021, failed to perform parental duties, and [DHS] established a pattern of continuing incapacity to care for [Child]. The only question is whether it will be remedied, and the [c]ourt cannot accept Father's representation that all behavioral issues are resolved.

> Secondly, if the [c]ourt were to deny [DHS's] Petition, it would at the very minimum extend the uncertainty for this child indefinitely. A number of the ordered components of the family service plan remain uncompleted. Father would have to complete all of them satisfactorily and endure a graduated physical custody schedule. During this period of time he would be under state supervision and any violations would either serve to extend the uncertainty for this child or cause [DHS] to refile for termination.

(Findings of Fact and Conclusions of Law at 8-9). We accept the court's analysis, which is supported by the record. *See In re Adoption of C.M, supra*.

The court did not err in determining that Father's incapacity caused Child to be without essential parental care, and the causes of the incapacity cannot or will not be remedied. *See In re Z.P., supra*. Father's plan to straighten out his life following his release from prison does not necessitate a disruption of the stability that Child currently enjoys. *See Interest of K.M.W., supra*. Regardless of any bond between Father and Child, terminating Father's parental rights does not destroy an existing, necessary, and beneficial relationship for Child. *See In re Z.P., supra*. Child can achieve permanency with Aunt and Uncle, who adopted Child's siblings and provided Child with necessary care since his placement. Thus, our review confirms that clear and convincing evidence supported termination of Father's parental rights under Sections 2511(a)(2) and (b). *Id.* Accordingly, we affirm the order terminating Father's parental rights.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 03/25/2024