J-S04016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.F., MOTHER | : | No. 2815 EDA 2022 |

Appeal from the Order Entered October 21, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0000756-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: A.N.E.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.F., MOTHER | : | No. 2816 EDA 2022 |

Appeal from the Decree Entered October 21, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-0000095-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: A.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.F., MOTHER | : | No. 2817 EDA 2022 |

Appeal from the Order Entered October 21, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0001001-2019

IN THE INTEREST OF: A.N.I.-E.S., A    :    IN THE SUPERIOR COURT OF
MINOR                                    :            PENNSYLVANIA
                                              :
                                              :
                                              :
                                              :
                                              :
                                              :
APPEAL OF: N.F., MOTHER          :         No. 2818 EDA 2022

Appeal from the Decree Entered October 21, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-0000412-2021

BEFORE:   MURRAY, J., KING, J., and PELLEGRINI, J.*

MEMORANDUM BY KING, J.:                      **FILED MARCH 10, 2023**

Appellant, N.F. ("Mother"), appeals from the decrees and orders entered in the Philadelphia County Court of Common Pleas, granting the petition of Appellee, Philadelphia County Department of Human Services ("DHS"), for involuntary termination of Mother's parental rights to her minor children, A.H. and A.S. ("Children"), and changing the placement goal to adoption.  We affirm.

The relevant facts and procedural history of this appeal are as follows. A.H. was born in January 2016.  A.S. was born in June 2019.  DHS was aware of the family due to Mother's history of untreated mental health problems. Community Umbrella Agency ("CUA") began providing in-home services for the family on August 1, 2017.  (***See*** Dependency Petition for A.H., filed

_____

* Retired Senior Judge assigned to the Superior Court.

5/8/19, at ¶5(c)).  On December 3, 2018, DHS received a report that Mother was shoplifting at a local store, and A.H. was with Mother at the time of the theft.  (*Id.* at ¶5(d)).  Police arrested Mother, and the Commonwealth charged her with retail theft and related offenses.  (*Id.*)

On January 6, 2019, DHS received a report that Mother and A.H. were involved in a serious automobile accident.  (*Id.* at ¶5(f)).  At the time of the accident, A.H. was not secured in a car seat or using a seatbelt.  (*Id.*)  Mother required hospitalization for injuries she suffered from the accident.  (*Id.*)  Upon arriving at the hospital, Mother was visibly intoxicated.  (*Id.*)  Mother lost consciousness, and hospital personnel needed to revive her with Narcan. (*Id.*)

On April 18, 2019, police arrested Mother for new drug offenses.  (*Id.* at ¶5(q)).  While incarcerated, Mother gave birth to A.S.[1]  (*See* Dependency Petition for A.S., filed 6/19/19, at ¶5(b)).  At the time of the delivery, Mother tested positive for methadone.  (*Id.* at ¶5(c)).  On May 8, 2019, DHS filed a dependency petition for A.H.  The court adjudicated A.H. dependent on May 21, 2019.  On June 19, 2019, DHS filed a dependency petition for A.S.  The court adjudicated A.S. dependent on June 24, 2019.  In conjunction with the dependency petitions, the court granted legal custody of Children to DHS.  In

---

[1] Despite their different initials, Children have the same father, E.S. ("Father"). The court terminated Father's parental rights on July 22, 2022, and he is not a party to the current appeals.

turn, DHS placed Children into kinship care with their paternal grandmother. Children have remained with their paternal grandmother ever since. (*See* N.T. Termination Hearing, 10/21/22, at 8-10).

Mother received single case plan objectives, including referrals to the Achieving Reunification Center ("ARC") for employment and housing, domestic violence counseling, random drug testing, and a dual diagnosis assessment. (*Id.* at 13). Due to Mother's 2019 incarceration, CUA modified the objectives to include only those programs that Mother could complete while incarcerated. Mother did not substantially comply with her objectives.

On February 19, 2021, DHS filed a petition for the involuntary termination of Mother's parental rights to A.H. On July 22, 2021, DHS filed a petition for the involuntary termination of Mother's parental rights to A.S. The court conducted a termination hearing on October 21, 2022. At the hearing, the court received testimony from Mother and the CUA case manager.[2] Following the hearing, the court entered decrees terminating Mother's parental rights to Children. The court entered separate permanency review orders noting the change of Children's goal to adoption. On November 7, 2022, Mother timely filed separate notices of appeal and concise statements of errors. This Court consolidated the matters *sua sponte* on January 10,

---

[2] During her direct examination, Mother indicated that she was once again incarcerated at the George Hill Correctional Facility. (N.T. Termination Hearing at 26). This most recent incarceration commenced on January 27, 2022, and Mother's expected release date is September 6, 2023. (*Id.*)

2023.

Mother now raises two issues for this Court's review:

> Whether the trial court committed reversible error, when it involuntarily terminated Mother's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8).

> Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of [Children] as required by the Adoption Act, 23 Pa.C.S.A. § 2511(b).

(Mother's Brief at 8).

Appellate review in termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).

> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

DHS filed a petition for the involuntary termination of Mother's parental rights on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

*   *   *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or

> subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> *    *    *
>
> **(b)  Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).  "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." ***In re Z.P., supra*** at 1117.[3]

> Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).  Only if the court determines that the parent's conduct warrants termination of … her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

---

[3] DHS also sought the involuntary termination of Mother's parental rights under Section 2511(a)(1), (5) and (8), but we need only analyze Section 2511(a)(2) for purposes of this appeal.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Mother's issues are related, and we address them together. Mother contends that DHS did not present clear and convincing evidence to support the termination of her parental rights to Children. Specifically, Mother asserts that her absence from Children's lives due to incarceration "is not, in itself, conclusively determinative of the issue of parental abandonment." (Mother's Brief at 14). Despite being incarcerated, Mother maintains that she "did not demonstrate a settled purpose of relinquishing her parental rights to A.H. and A.S." (*Id.* at 15). Mother emphasizes her testimony from the termination hearing, which established that she attempted to comply with her case plan objectives by attending parenting classes and obtaining drug and alcohol treatment. Mother insists that "her only outstanding obstacle to reunification is her current incarceration, which will be resolved in September of 2023." (*Id.* at 16). Upon her release, Mother "intends to return home with a plan to resume her life." (*Id.* at 17).

Regarding Section 2511(b), Mother argues that "DHS did not establish Mother lacked a bond with her children." (*Id.* at 17). Mother claims that a bond exists because "she was maintaining visitation with her children as facilitated by paternal grandmother as well as phone contact." (*Id.*) Based upon the foregoing, Mother concludes that the court erred and abused its discretion by terminating her parental rights. We disagree.

"The bases for termination of parental rights under Section 2511(a)(2),

due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." **In re S.C.B.**, 990 A.2d 762, 771 (Pa.Super. 2010). Under Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." **In Interest of Lilley**, 719 A.2d 327, 330 (Pa.Super. 1998).

"Each case of an incarcerated parent facing termination must be analyzed on its own facts, keeping in mind … that the child's need for consistent parental care and stability cannot be put aside or put on hold[.]" **Interest of K.M.W.**, 238 A.3d 465, 474 (Pa.Super. 2020) (*en banc*) (quoting **In re E.A.P.**, 944 A.2d 79, 84 (Pa.Super. 2008)). "The focus is on whether the parent utilized resources available while in prison to maintain a relationship with … her child. An incarcerated parent is expected to utilize all available resources to foster a continuing close relationship with … her children." **In re B., N.M.**, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted). "Importantly, a parent's 'recent efforts to straighten out [her] life' upon release from incarceration does not require that a court 'indefinitely postpone

adoption.'" ***Interest of K.M.W., supra*** at 474 (quoting ***In re Z.P., supra*** at 1125).

Under Section 2511(b), the court must consider whether termination will best serve the child's needs and welfare. ***In re C.P.***, 901 A.2d 516 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." ***Id.*** at 520 (internal citations omitted). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." ***In re Z.P., supra*** at 1121 (internal citations omitted). "The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have … her rights terminated." ***In re B.L.L.***, 787 A.2d 1007, 1013 (Pa.Super. 2001).

Instantly, the court received testimony from Tajanae Anderson, the CUA case manager. After establishing the circumstances that led DHS to file the dependency petitions, Ms. Anderson testified about Mother's noncompliance with her single case plan objectives. Specifically, Mother did not engage with

her ARC referrals for housing and employment. (*See* N.T. Termination Hearing at 13-14). Mother also failed to obtain a dual diagnosis assessment. (*Id.* at 14). Although Mother did attend some parenting classes, she did not complete this program. (*Id.*) According to Ms. Anderson, Mother did not successfully complete any of her single case plan objectives by the time of the termination hearing. (*Id.* at 15).

Ms. Anderson acknowledged that Mother was arrested five (5) times over the life of this case. (*Id.* at 12). Nevertheless, CUA modified the single case plan objectives to include only those programs that Mother could complete while incarcerated. (*Id.* at 15). Due to Mother's noncompliance with her objectives, Ms. Anderson concluded that Mother failed to alleviate the circumstances that brought Children under the care of DHS. (*Id.*) Regarding the bond between Children and Mother, Ms. Anderson said she had "never seen them interact." (*Id.* at 16). Ms. Anderson further opined that Children would not suffer irreparable harm if the court terminated Mother's parental rights. Ms. Anderson emphasized that Children "look at the paternal grandmother as mom," and the most appropriate permanency goal for Children is "to allow paternal grandmother to adopt them." (*Id.*)

Mother also testified and disputed Ms. Anderson's claims about the single case plan objectives. Mother insisted that she completed parenting classes and a drug and alcohol program while incarcerated. (*Id.* at 30-31). Regarding employment, Mother stated that she was not incarcerated in 2020,

but the COVID-19 pandemic thwarted her efforts to find a job. (*Id.* at 28).

Further, Mother discussed her efforts to visit with Children. Mother testified

that the paternal grandmother facilitated visitation throughout 2020.

However, Mother could not provide a precise date for her last visit with

Children claiming, "I think it was like the end of 2021—2020." (*Id.* at 29).

The court considered the testimony from the termination hearing and

found Ms. Anderson to be credible. When explaining its decision to terminate

Mother's parental rights, the court emphasized the need for permanency in

Children's lives:

> The evidence reflects that [Children] have been in care for 30 months, since approximately May, 2019. Aggravated circumstances were found regarding the other children.[4] The testimony reflects that single case plan objectives were established for reunification.
>
> While Mother has been arrested several times and in various institutions she was released for, according to her testimony, approximately one year. Although she states that she did complete some of the single case plan objectives I don't have any evidence of that. While she appears to have in place a plan that she would like to pursue for—once she's released, her release date is not for another year. These children need permanency.
>
> While [Ms. Anderson] has not been able to opine regarding a bond with their mother, the opinion is that the children are bonded with the paternal grandmother. She has a good relationship with them, and she has been the caretaker of these children almost since the time of initial placement.

---

[4] On November 5, 2019, the court entered an aggravated circumstances order finding that Mother had her parental rights terminated to other children. Mother confirmed this fact at the termination hearing. (*See* N.T. Termination Hearing at 34-35).

> These children deserve permanency. Again, I have no evidence of Mother completing the single case plan objectives, notwithstanding the barriers that she states regarding incarceration and/or the pandemic.
>
> I find it would be in the children's best interest to be freed for adoption so that they can be—continue to be cared for by the person who is currently providing [for] their developmental, physical, and emotional needs and welfare, and that is their … paternal grandmother.

(N.T. Termination Hearing at 39-40). We accept the court's analysis, which is supported by the record.

On this record, the court did not err in determining that Mother's incapacity caused Children to be without essential parental care, and the causes of the incapacity cannot or will not be remedied. *See Interest of Lilley, supra*. Mother's parental deficiencies predate her most recent incarceration, and any plan to straighten out her life upon her release from incarceration does not require an indefinite postponement of adoptions for Children. *See Interest of K.M.W., supra*. Additionally, regardless of whether a bond exists between Mother and Children, terminating Mother's parental rights would not destroy existing, necessary, and beneficial relationships for Children. *See In re Z.P., supra*. Based upon the foregoing, our review of the record confirms that clear and convincing evidence supported termination of Mother's parental rights under Sections 2511(a)(2) and (b). *Id.* Consequently, we affirm the decrees terminating Mother's parental rights and the orders changing the placement goals to adoption.

Decrees and orders affirmed.

- 13 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2023