J-S05016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.M., JR. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: G.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1281 WDA 2022 |

Appeal from the Decree Entered October 7, 2022
In the Court of Common Pleas of Fayette County Orphans' Court at
No(s):  No 18 Adopt 2022

| | | |
|---|---|---|
| IN RE: ADOPTION OF: R.M. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: G.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1282 WDA 2022 |

Appeal from the Decree Entered October 7, 2022
In the Court of Common Pleas of Fayette County Orphans' Court at
No(s):  No 19 Adopt 2022

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED:  March 28, 2023**

G.L. (Mother) appeals[1] from the decrees,[2] entered in the Fayette County Orphans' Court, terminating her parental rights to her two minor children, M.M., Jr. (born April 2019) and R.M. (born May 2016) (Children).[3] Mother acknowledges that due to her incarceration, drug addiction, and unstable housing, she did not meet any of her Family Service Plan (FSP) goals. Mother argues, however, that Fayette County Children and Youth Services Agency (CYS) did not provide her with services in meeting those goals during her incarceration, and, consequently, she was denied the opportunity to fully engage in reunification services. After our review, we find this claim meritless, and we affirm.

On October 15, 2020, Children were removed from Mother's care as a result of Mother's substance abuse, mental health issues, and unstable housing. On April 4, 2022, CYS filed petitions to terminate Mother's parental rights to Children pursuant to the Adoption Act.[4] The court held a termination

_____

[1] Mother has complied with the dictates of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), by filing a separate notice of appeal for each Orphans' Court docket number. **See In re: M.P.**, 204 A.3d 976 (Pa. Super. 2019) (applying **Walker** holding in termination of parental rights context).

[2] By order dated December 5, 2022, this Court *sua sponte* consolidated these appeals as they involve related parties and issues. **See** Pa.R.A.P. 513.

[3] On October 7, 2022, the Orphans' Court granted Father's petitions to voluntarily relinquish his parental rights to Children.

[4] 23 Pa.C.S.A. §§ 2101-2938.

hearing on August 24, 2022. At the hearing, the court heard testimony from three CYS caseworkers, a Justice Works[5] supervisor, and Mother, who was represented by counsel.[6]

Terry Brown, a Justice Works supervisor, testified that Mother completed 3 of 18 classes in the nurturing parent program. He stated that CYS sent Justice Works the referral for Mother in February 2021, that Mother began classes on March 1, 2021, and, after April 5, 2021, she did not attend more classes. N.T. Termination Hearing, 8/24/22, at 9-12. Brown also testified that during the period from February 23, 2021, through January 27, 2022, Mother attended only 41 of 106 supervised visits with Children.[7] *Id.* at 13. Brown also explained that Mother was subject to random drug screens

---

[5] Justice Works is a child and family services agency, which CYS utilizes to support its efforts "to create safety, permanency, and well-being for Fayette children." *See* https://www.justiceworksyouthcare.com/2014/12/17/fayette-county-children-and-youth-services-selects-justiceworks-for-intensive-in-home-services/ (last visited 3/9/23).

[6] The court appointed Brent Eric Peck, Esquire, as *guardian ad litem* for Children. Attorney Peck represented Children's legal interests as well, perceiving no conflict. *See* N.T. Termination Hearing, 8/24/22, at 6. *In Re: T.S., E.S.*, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian ad litem representing the child's best interests can also represent the child's legal interests."). Attorney Peck has filed a statement in lieu of a brief on appeal, indicating his agreement with Judge Cordaro's termination decrees. *See* Statement in Lieu of Brief, 1/10/23.

[7] Additionally, Mother confirmed 28 visits, but did not appear for them.

twice a week, and that she tested positive on many occasions, including during visits. *Id.* at 15, 19-20.[8] He testified that efforts were made to schedule twice-a-week drug screens, whether by visits or phone calls, however, either Mother was not always available or staff was unable to reach her by phone. *Id.* at 27.

CYS caseworker Tiffany Marghella, the first caseworker to handle this case, testified that Mother's FSP consisted of the following: a drug and alcohol assessment; successfully addressing drug and alcohol concerns; obtaining a mental health evaluation; maintaining appropriate housing; completing parenting classes; maintaining a bond with Children while they were in foster care; and cooperating with CYS. *Id.* at 30-33. She stated that she met with Mother to go over the FSP goals in February 2021, that Mother signed the plan, and that the plan was reviewed every six months. Caseworker Marghella noted that she met with Mother on March 22, 2021, went over the service plan with her and provided her another copy since Mother stated she had lost her copy. *Id.* at 40. In August 2021, the plan remained the same because Mother had not completed the goals. *Id.* at 33-34. Specifically, Marghella stated that Mother did not keep in touch with CYS, CYS had difficulty reaching

---

[8] Counsel for CYS read the laboratory drug screen reports into the record, stating that Mother tested positive for cocaine, barbiturates, buprenorphine, marijuana, morphine, and methamphetamine, or combinations of these drugs, on the following dates: March 2, 4, 8, 19, 21 of 2021; April 8, 20, 27 of 2021; May 4, 2021; June 15, 29 of 2021; July 1, 6, 8, 27, 29 of 2021; September 7, 2021; October 22, 2021; December 2, 2021; and January 1, 13, 2022. *See* N.T. Termination Hearing, *supra* at 15-17. On her last visit with Children, January 27, 2022, Mother refused the drug test. *Id.* at 28.

her because her whereabouts and phone number changed often, Mother was inconsistent with visits and, ultimately, Mother's visitation rights were suspended on May 18, 2021, after she missed four visits in a row, Mother consistently failed drug screens, was noncompliant with drug and alcohol counseling, was discharged from nurturing parenting classes for noncompliance, and did not compete a mental health evaluation. *Id.* at 35-42. Mother did undergo a mental health evaluation on May 3, 2021, which recommended drug and alcohol therapy as well as mental health therapy, however, Marghella testified Mother did not complete any of the goals related to drug and alcohol therapy, mental health therapy, or housing. *Id.* at 41-43.

CYS caseworker Jesse Davis, Mother's caseworker from September 2021 to April 2022, testified that during that period, "she never had a good phone number for [M]other. . . [and] I did not have a good address for her either." *Id.* at 54-55. Caseworker Davis also testified that Mother continued to test positive on drug screens even after completing inpatient rehabilitation at Pyramid Rehabilitation Center, that Mother admitted to her she "was still using" as of December 2021, and that Mother refused Davis's offer to help her get back into rehabilitation or get her into a shelter. *Id.* at 55-56. Davis clarified that the only time Mother reached out to her was when she contacted Davis to ask "if she could sign over the [C]hildren to her mother." *Id.* at 59. Davis concluded that Mother did not complete any of the goals in the FSP. *Id.* at 60.

On March 28, 2022, the FSP goal was changed from reunification to adoption. *Id.* at 73. On April 18, 2022, Mother was incarcerated.

Caseworker Jessica Roberts, the caseworker at the time of the termination hearing, testified that she began working with Mother on May 1, 2022, that Mother was incarcerated at that time, and that she spoke with Mother about her FSP goals. *Id.* at 67-68. Roberts confirmed that at that time, and as of the date of the termination hearing, Mother had reached none of those goals. *Id.* at 68-69.

Finally, Mother testified. Mother stated that she was incarcerated in county jail on April 18, 2022 as a result of a probation violation, and, after three months, she was transferred to a state correctional facility. Mother testified that caseworker Roberts never visited her while in she was incarcerated, that she called caseworker Roberts several times to try to arrange for video visits with Children, and that no one from CYS mentioned services available to her while incarcerated. *Id.* at 76-78. Mother also asserted that, prior to her incarceration, and contrary to caseworker Marghella's testimony, "[CYS] never offered me anything. They said that I had to do everything on my own." *Id.* at 82.

Following the hearing, the court granted the petitions for termination, finding CYS had presented clear and convincing evidence that termination was

appropriate under sections 2511(a)(1), (5), and (b),[9] and finding that

Mother's testimony regarding CYS's failures was not credible. ***See*** Trial Court

---

[9] Section 2511 provides, in relevant part:

**(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §§ 2511(a)(1), (5), (b).

Opinions, 11/17/22, at 5. ***See also In re C.P.***, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S.A § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S.A § 2511(b)).

Mother filed a notice of appeal. Both Mother and the trial court have complied with Pa.R.A.P. 1925. Mother raises the following issue for our review: whether the trial court erred in granting CYS's petition to terminate Mother's parental rights to M.M., Jr., and R.M., when CYS failed to provide adequate reunification services while Mother was incarcerated. ***See*** Appellant's Brief, at 3.

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. ***In re A.R.***, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. ***Id. See also In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012) (even where facts could support opposite result, appellate court must not second guess trial court and impose its own credibility determinations and judgment); ***In re Adoption of A.C.H.***, 803 A.2d 224, 228 (Pa. Super. 2002) (trial court, as finder of fact, is sole determiner of witness credibility).

The Honorable Linda R. Cordaro made the following findings with respect to the evidence supporting termination of Mother's parental rights to Children pursuant to section 2511(a)(5):

> Here, [Children] had been in the [] foster home since October 2020. Section 2511(a)(5) includes that
>
> > . . . the conditions which led to the removal or placement of the child continued to exist, the parent cannot or will not remedy the condition which led to the removal or placement of the child within a reasonable period of time, and the termination of parental rights would best serve the needs and welfare of the child.
>
> Here, the conditions [that] led to [Children's] placement involved Mother's drug use. CYS subsequently developed a [FSP] with the goal of achieving reunification, and the requirements of the [FSP] appropriately addressed the issues that caused the placement of [Children]. Specifically, the [FSP] required Mother to undergo a drug and alcohol assessment, to maintain sobriety; to address her mental health needs; to maintain a bond with [Children] through regular visitation; and to complete parenting classes. Although Mother did enter into a FSP, and she acknowledged that she understood the [FSP], she failed to address her drug addiction. By her own admission, prior to her incarceration on April 18, 2022, she had not been sober since 2017. She also acknowledged that she had not had [Children] in her care since October 2020.

Trial Court Opinion, 11/17/22, at 10-11.[10] Thus, the court's findings that Children had been removed for at least six months, the conditions that led to placement of Children continued to exist, and that Mother either could not or did not remedy those conditions in a reasonable period of time based on services available to her, is supported in the record. *In re A.R.*, *supra*.

---

[10] We note Judge Cordaro wrote separate opinions for M.M., Jr., and R.M., which are virtually identical; therefore, it is unnecessary to cite to both opinions.

Moreover, the court found that M.M., Jr., who was age three at the time of the hearing, and R.M., who was age six at the time of the hearing, had been in the foster home for 22 months, that the foster family was a permanency option for Children, and that Children identified foster family as their family, and, as such, concluded termination would best serve the developmental, physical, and emotional needs and welfare of Children. **See** 23 Pa.C.S.A. §§ 2511(a)(5), (b).

After our review, we find that CYS presented sufficient evidence to support the court's decrees terminating Mother's parental rights pursuant to sections 2511(a)(5) and (b), and we find no error or abuse of discretion. **See In re A.R.**, **supra**; **see also In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc) (this Court can affirm trial court's decision regarding termination of parental rights with regard to any single subsection of section 2511(a)).

Furthermore, the court found Mother's testimony that CYS did not provide services for reunification prior to her incarceration not credible. We will not disturb that finding. **In re Adoption of A.C.H.**, **supra**. Furthermore, Mother's claim is belied by the record. CYS presented clear and convincing evidence that Mother was provided ample services and opportunity to complete her goals and achieve reunification, but that Mother made neither significant nor consistent strides to do so. Despite CYS's reasonable efforts in providing services, Mother was unable to maintain sobriety or complete any of her FSP goals. Mother's attempt to place blame on CYS for failing to support

her through her incarceration is, simply stated, misguided. *See In re N.C.*, 909 A.2d 818, 823 (Pa. Super. 2006) ("[W]hen the child welfare agency has made reasonable efforts to return a foster child to . . . [his or] her biological parent, but those efforts have failed, then the agency must redirect its efforts towards placing the child in an adoptive home."); *see also In re N.W.*, 859 A.2d 501, 508 (Pa. Super. 2004) ("To address the issue of foster home drift, the [Adoption and Safe Families Act] has made a commitment to, and Pennsylvania statutes mandate, permanency planning such that, 'when a child is placed in foster care, after reasonable efforts have been made to establish the biological relationship, the needs and welfare of the child require CYS and foster care institutions to work toward termination of parental rights, placing the child with adoptive parents.'") (citations omitted).

Here, the record establishes that CYS's efforts at providing services to Mother from the time Children were removed were reasonable, that Mother was unable to meet her FSP goals despite those services, and that after the goal was changed from reunification to adoption, CYS's focus on permanency planning for Children with the foster family was appropriate. *See In re S.C.B.*, 990 A2d 762 (Pa. Super. 2010).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  3/28/2023