J-S17031-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF N.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.S, FATHER | : | No. 1215 WDA 2022 |

Appeal from the Decree Entered September 29, 2022
In the Court of Common Pleas of Fayette County
Orphans' Court at No(s): 68 ADOPT 2019

| | | |
|---|---|---|
| IN RE: ADOPTION OF A.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.S., FATHER | : | No. 1216 WDA 2022 |

Appeal from the Decree Entered September 29, 2022
In the Court of Common Pleas of Fayette County
Orphans' Court at No(s): 66 Adopt 2019

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.S., FATHER | : | No. 1238 WDA 2022 |

Appeal from the Decree Entered September 29, 2022
In the Court of Common Pleas of Fayette County
Orphans' Court at No(s): 69 Adopt 2019

IN RE: ADOPTION OF: N.S., JR., A   :    IN THE SUPERIOR COURT OF
MINOR                       :            PENNSYLVANIA
                                         :
                                         :
                                         :
                                         :
                                         :
                                         :
APPEAL OF: N.S., FATHER       :        No. 1239 WDA 2022

Appeal from the Decree Entered September 29, 2022
In the Court of Common Pleas of Fayette County
Orphans' Court at No(s):  67 Adopt 2019

BEFORE:  LAZARUS, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                       **FILED: JUNE 26, 2023**

Appellant, N.S. ("Father"), appeals from the decrees entered in the Fayette County Court of Common Pleas, granting the petition of Appellee, Fayette County Department of Child Youth Services ("CYS"), for involuntary termination of Father's parental rights to his minor children, N.S., A.F., A.S., and N.S. Jr. ("Children").  We affirm.

The relevant facts and procedural history of this appeal are as follows. N.S. was born in March 2015.  A.S. was born in May 2016.  N.S., Jr. was born in April 2017.  A.F. was born in December 2018.  CYS first became involved with the family in December 2015 due to the parents' inability to provide adequate healthcare for Children.  (**See** Trial Court Opinion, filed 2/3/23, at 2).  Children's medical issues reached a crescendo on March 18, 2018, when A.S. went into cardiac arrest.  (**Id.**)  An ambulance responded to the family home, and medics found A.S. "face down on the floor, unresponsive[.]"

(Termination Petition for A.S., filed 10/21/19, at ¶9). The medics asked F.F. ("Mother") how long A.S. had been sick, but Mother could not answer. (**See** **id.**) A.S. required hospitalization in Pittsburgh for her condition.

On March 20, 2018, the trial court issued an emergency order granting legal and physical custody of A.S. to CYS upon the child's discharge from the hospital. On March 21, 2018, the court conducted a shelter care hearing regarding N.S., A.S., and N.S., Jr. Following the hearing, the court transferred legal and physical custody of the children to CYS. The court adjudicated these children dependent on March 28, 2018. CYS subsequently placed the children with their maternal grandfather.

On December 11, 2018, the Commonwealth brought criminal charges against Father and Mother for the conduct that led to A.S.'s hospitalization. (**See** Trial Court Opinion at 3). Shortly thereafter, A.F. was born. Following a hearing, the court adjudicated A.F. dependent on December 20, 2018. A.F. was placed into foster care with a different sibling. Around this time, CYS developed a family service plan ("FSP") for the parents. The parents, however, did not comply with their FSP goals.

On October 21, 2019, CYS filed petitions for the involuntary termination of Father's parental rights to Children. The court conducted a termination hearing on September 27, 2022. On September 29, 2022, the court entered

decrees terminating Father's parental rights to Children.[1]  On October 13, 2023, Father timely filed separate notices of appeal and concise statements of errors.  This Court consolidated the matters *sua sponte* on November 8, 2022.

Father now raises the following issues for this Court's review:

> Whether [CYS] has presented sufficient evidence to sustain its burden of proof by clear and convincing evidence that the parental rights of [Father] should be terminated?
>
> Whether the trial court abused its discretion, and/or committed an error of law by ruling that [CYS] has presented sufficient evidence to sustain its burden of proof by clear and convincing evidence that the parental rights of [Father] should be terminated?
>
> Whether the trial court abused its discretion, and/or committed an error of law by permitting a doctor's expert medical opinions and conclusion to be admitted through the testimony of a caseworker for [CYS]?
>
> Whether the trial court abused its discretion, and/or committed an error of law by considering a doctor's expert medical opinions and conclusion to be admitted through the testimony of a caseworker for [CYS]?

(Father's Brief at 4-5).[2]

Appellate review in termination of parental rights cases implicates the

_____

[1] The court also terminated Mother's parental rights, but she is not a party to the current appeals.

[2] Although Father's statement of questions presented lists four issues, the argument section of his brief addresses only two discrete claims. Consequently, we address the claims as set forth in the argument section of Father's brief.

following principles:

> A parent's right to make decisions concerning the care, custody, and control of his or her children is among the oldest of fundamental rights. The time-tested law of the Commonwealth requires that we balance this intrinsic parental interest within the context of a child's essential needs for a parent's care, protection, and support. We readily comprehend the significant gravity of a termination of parental rights, which has far-reaching and intentionally irreversible consequences for the parents and the child. For these reasons, the burden of proof is upon the party seeking termination to establish by clear and convincing evidence the existence of the statutory grounds for doing so. [C]lear and convincing evidence is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. Because of this serious impact attending the termination of parental rights, it is important that a judicial decree extinguishing such rights be based solely on competent evidence.

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but it does not require the appellate court to accept the [trial] court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the trial court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. However, [w]e must employ a broad,

comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

***In re Adoption of C.M.***, ___ Pa. ___, ___, 255 A.3d 343, 358-59 (2021) (internal citations and quotation marks omitted).

CYS filed a petition for the involuntary termination of Father's parental rights on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)  General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\*  \*  \*

**(b)  Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).  "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." ***In re Z.P.***, 994

A.2d 1108, 1117 (Pa.Super. 2010).[3]

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

In his first issue, Father contends that CYS failed to present clear and convincing evidence of his neglect of Children.[4] Father claims he attended supervised visits, and that he demonstrated his "love and affection" for Children by making "elaborate meals" for them. (Father's Brief at 16). While the court criticized Father for spending "significant time in the kitchen" during visits, Appellant asserts that the court "is attempting to weaponize the fact that [Father] exhibited an elaborate and zealous attempt to lavishly provide for [Children], above and beyond the bare minimum[.]" (*Id.* at 15). Regarding the specific circumstances surrounding his parenting of A.F., Father emphasizes that the court removed A.F. from Father's care shortly after the

---

[3] CYS also sought the involuntary termination of Father's parental rights under Section 2511(a)(2), (5) and (8), but we need only analyze Section 2511(a)(1) for purposes of this appeal.

[4] Much of Father's argument is devoted to the evidence supporting the involuntary termination of his parental rights to A.F. Nevertheless, Father presents his argument in generic terms, and we interpret the argument as presenting a challenge to the court's termination decision for each child.

child was born.  Father insists that he "never had sufficient custody of [A.F.] to establish any failure to love, protect, support and/or otherwise care for the child."  (**Id.**)  Father further argues that the court did not give him "an adequate opportunity to form a parental bond with [A.F.]" (**Id.** at 14).  Under these circumstances, Father concludes that the court erred and abused its discretion by terminating his parental rights.  We disagree.

"A court may terminate parental rights under subsection 2511(a)(1) when the parent demonstrates a settled purpose to relinquish parental claim to a child or fails to perform parental duties for at least six months prior to the filing of the termination petition."  **In re I.J.**, 972 A.2d 5, 10 (Pa.Super. 2009).

> Though we do not adhere to any strict definition of parental duty, a child has a right to essential parental care, and our jurisprudence reveals certain irreducible qualities of a parent's attendant obligation.  Foremost, it is a positive duty requiring affirmative performance.  [C]ommunication and association are essential to the performance of parental duty[.]  [P]arental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.  A parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship, or his rights may be forfeited.  Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

**Adoption of C.M., supra** at ___, 255 A.3d at 364 (internal citations and quotation marks omitted).

Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* (internal citations omitted). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P., supra* at 1121.

Instantly, the court received testimony from Casey Josselyn, one of the family's caseworkers. Ms. Josselyn testified that the FSP required that Father attend mental health appointments and domestic violence classes, take care of Children's medical needs, work with in-home services, and maintain safe and appropriate housing. (*See* N.T. Termination Hearing, 9/27/22, at 6). Ms. Josselyn indicated that Father has not attended a mental health appointment

since May 2021. (*Id.* at 8). Father informed Ms. Josselyn that "he just does not feel that he needs" mental health treatment. (*Id.*) Although Father completed an initial round of domestic violence classes, CYS needed to "re-refer" Father for additional classes after an incident in 2021. (*Id.* at 16). Father did not complete the "second round" of domestic violence classes. (*Id.*) Regarding Father's residence, Ms. Josselyn testified that the house did not have enough bedrooms for Father and Children. (*Id.* at 19). Further, Father's landlord was attempting to evict the family due to unpaid rent. (*Id.* at 21)

Catherine Kintz, Children's foster care caseworker, testified that she acted as a liaison between Father and the foster parents, keeping Father apprised of what was happening in Children's lives. (*Id.* at 64-65). Regarding Children's healthcare, Ms. Kintz explained that she provided Father with "all the information of when they've had their physicals, and their dental, eye appointments." (*Id.* at 68-69). Nevertheless, Father asked to attend only one medical appointment. (*Id.* at 68). Ms. Kintz observed more involvement from Children's maternal grandfather. (*Id.* at 71).

Regarding Father's visits with Children, the court heard testimony from Laura Daumit, the director of the family's in-home service provider. (*Id.* at 49-50). Ms. Daumit admitted that Father consistently visited with Children in 2020. (*Id.* at 55). In 2021, however, Father and Mother attended only thirty (30) out of fifty (50) possible visits. (*Id.*) In 2022, Father and Mother

- 10 -

attended only eight (8) out of forty (40) possible visits. (*Id.* at 56). Ms. Daumit elaborated on the "quality" of the visits as follows:

> Each visit is typically the same. Um, it revolves around Father making elaborate meals, um sometimes it is a four (4) hour visit, there would be two (2) meals. He would come in and he would prep breakfast. They would eat breakfast and he would clean up, the kids go … into the living room, um, they pretty much entertain themselves. There was little to no interaction. Um, and then he would begin to cook lunch and clean up lunch. Um, I'm looking through the visit reports. I mean the kids are just kinda, when they come in it's not an over-excitement to see the parents, [they are] not running to hug them, kiss them, um, there's no "I love you's" during visit.

(*Id.* at 57-58).

The court considered the testimony and determined CYS had provided clear and convincing evidence in support of termination.

> Given the abuse and neglect of the children, it is in the best interest of all the children for parental rights to be terminated swiftly and permanently. Any child is in danger in the custody of Father. Father suffers from long-standing mental issues which he refuses to address. Father is hostile with providers. Father has no appropriate home for any child and is untruthful about employment. [CYS] has tried since 2018 to offer services to Father and he has failed the [FSP]. He will not be given another opportunity to fail these children.

(Trial Court Opinion at 13). We accept the court's analysis, which is supported by the record.

While Father argues that evidence presented by CYS is not clear and convincing, the record demonstrates that Father failed to comply with the requirements set forth in the FSP, and he failed to perform parental duties

- 11 -

since Children's initial placements in 2018. *See Adoption of C.M., supra; In re I.J., supra*. Additionally, we cannot fault the court's swift removal of A.F. where Father was facing criminal charges for his abuse of A.S. Thus, the termination of Father's parental rights does not destroy existing, necessary, and beneficial relationships for Children. *See In re Z.P., supra*. Based upon the foregoing, our review of the record confirms that clear and convincing evidence supported termination of Father's parental rights under Sections 2511(a)(1) and (b). *Id.*

In his second issue, Father contends that a witness offered impermissible hearsay testimony when she testified that a doctor said that A.S.'s injuries were the result of neglect. (*See* Father's Brief at 18). We emphasize, however, that the failure to "make a timely and specific objection at the appropriate stage of the proceedings" results in the waiver of the claim on appeal. *See In re. S.C.B.*, 990 A.2d 762, 767 (Pa.Super. 2010) (quoting *Thompson v. Thompson*, 963 A.2d 474, 475-476 (Pa.Super. 2008)). Here, Father's counsel did not object to the testimony at issue during the termination hearing. (*See* N.T. Termination Hearing at 91-92). Accordingly, Father's claim is waived. Thus, we affirm the decrees terminating Father's parental rights.

Decrees affirmed.

Judge Lazarus joins this memorandum.

Judge Olson concurs in the result.

- 12 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/26/2023</u>