J-S36001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: R.E.-C.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.D.W, FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 921 MDA 2024 |

Appeal from the Order Entered May 24, 2024
In the Court of Common Pleas of Adams County Orphans' Court at No(s):
RT-7-2024

| | | |
|---|---|---|
| IN THE INTEREST OF: R.E.-C.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.D.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 922 MDA 2024 |

Appeal from the Order Entered July 26, 2024
In the Court of Common Pleas of Adams County Juvenile Division at
No(s): CP-01-DP-0000046-2022

BEFORE: LAZARUS, P.J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY LAZARUS, P.J.:                **FILED: DECEMBER 5, 2024**

D.D.W. (Father) appeals from the orders changing the permanency goal from reunification to adoption and involuntarily terminating his parental rights to R.E.-C.E. (born 4/18) (Child).[1]  On appeal, Father argues Adams County Children and Youth Services (CYS) failed to make reasonable efforts to support

---

[1] On August 12, 2024 our Court, *sua sponte*, consolidated the appeals at Nos. 921 and 922 MDA 2024.  **See** Pa.R.A.P. 513.

reunification and that the trial court abused its discretion in terminating his parental rights when he "continued to have a meaningful relationship and connection with []Child." Appellant's Brief, at 23. After our review, we affirm.

On October 27, 2022, CYS responded to a general protective services referral regarding Child. Child was residing with a guardian at a motel in Gettysburg. There, CYS met with the guardian, who was under the influence of drugs and/or alcohol, hallucinating, and unable to provide information about herself, Child, or Child's parents. Child was placed in emergency foster care and, the next day, the court held an emergency shelter care hearing at which M.M. (Mother) and several maternal family members offered to be a placement resource for Child. At this time, Father was incarcerated in Maryland and had a pending protection from abuse order against him. Mother, who tested positive for drugs and was reported to have a significant history of substance abuse, was unable to assume custody. The court directed CYS to explore maternal kinship resources.

At a November 8, 2022 dependency hearing, Mother requested a continuance to explore kinship placement prior to an adjudication. The court granted Mother's request. Father, who remained in custody, was not present.

At a December 20, 2022 dependency hearing, Mother's counsel sought a continuance to secure Mother's presence, as she was incarcerated in Maryland on a probation violation. Paternal kinship resources, who resided in Maryland, were also present at the proceeding, and CYS reported that

Interstate Compact on the Placement of Children (ICPC)[2] procedures were explained to maternal grandfather.[3]  The court rescheduled the dependency hearing for January 17, 2023, directed CYS to continue exploring kinship resources, and ordered Child remain in foster care.

At the January 17, 2023 hearing, the court adjudicated Child dependent. Both Father and Mother remained incarcerated and, on February 21, 2023, the court entered a dispositional order, ordered CYS to continue family finding efforts, continued Child's placement in foster care, and scheduled a permanency hearing for April 4, 2023.  The permanency goal remained reunification.

_____

[2] Section 761 of the Pennsylvania Public Welfare Code, the ICPC, 62 P.S. § 761, is implemented, *inter alia*, under 55 Pa. Code § 3130.41.  The Council of State Governments recommended the ICPC to address common problems arising from the interstate care and placement of children in foster care or adoptive homes because when a child was sent out of state, the state of origin lost jurisdiction over the child and supervision became difficult or impossible. The ICPC is an agreement among the states, the District of Columbia, and the Virgin Islands to cooperate with each other in the interstate placement of children.  **See** 62 P.S. § 761 at Article I(a) ("Each child requiring placement shall receive the maximum opportunity to be placed in a suitable environment and with persons or institutions having appropriate qualifications and facilities to provide a necessary and desirable degree and type of care.").

[3] As of July, 2024, Child had two pending, approved kinship ICPC resources, both of whom resided in Delaware.  The two ICPC referrals then in process were for Child's maternal great aunt and second cousin in Delaware, and a paternal second cousin in Maryland.  They were approved through ICPC on or about February 12, 2024.  CYS had not recommended Child be placed with either prospective ICPC resource due to Child's stability and well-being with Foster Family, an adoptive resource, and Child's limited relationship with the ICPC resources.

Following the April 4, 2023 hearing, the court continued Child's foster care placement, having determined both Mother and Father, who remained incarcerated, had been minimally compliant with the permanency plan. The court also added a concurrent permanency goal of adoption and scheduled a permanency hearing for July 6, 2023.

At a permanency review hearing on July 6, 2023, the court was informed that Mother had passed away due to a substance overdose. Father remained incarcerated in Maryland, but was present by electronic communication. The court found Father had minimally complied with his permanency plan goals.

On July 31, 2023, the court approved Child's transfer to a second foster family (Foster Family); Father did not oppose the transfer. **See** Order, 7/31/23. Foster Family was identified as an adoptive resource.

On October 3, 2023, the court held another permanency hearing. At that time, Father remained incarcerated and the court found minimal compliance with Father's permanency plan. The court continued Child's placement with Foster Family.

Father was released from incarceration on October 10, 2023. On October 26, 2023, CYS filed a petition for special relief, requesting that the court enter an order for expedited placement pursuant to ICPC since Father had requested to be a resource for Child in Maryland, which the court entered on October 30, 2023. CYS submitted an ICPC to Maryland and, in November 2023, CYS received a response that the ICPC request was closed due to "lack of engagement and compliance by [F]ather." **See** Involuntary Termination

Hearing, 5/10/24, at 39-40. **See also** Letter from Maryland Department of Human Services, 11/28/23 ("Due to the lack of follow through by [Father], we have not been able to begin the home study process. Therefore, we are not able to move forward with completing the ICPC home study. As a result, we are closing this request for this home study.").

On January 2, 2024, the court held a permanency review hearing. CYS proposed the following goals be added to Father's permanency plan: (1) Father will comply with and follow all recommendations from Maryland ICPC; (2) Father will ensure basic needs and developmental needs of Child are met, including medical appointments; and (3) Father will participate in a parenting program and comply with all recommendations of the provider. Following the hearing, the court entered a permanency review order finding Father had moderately complied with the permanency plan and had made minimal progress toward alleviating the circumstances that necessitated the original placement. The placement plan remained reunification with a concurrent plan of adoption.

The court held a final permanency review hearing on February 27, 2024. At that time, the court found Father had minimally complied with the permanency plan and had made minimal progress toward alleviating the circumstances that necessitated the original placement.

On March 14, 2024, CYS filed a petition to involuntarily terminate Father's parental rights pursuant to sections 2511(a)(1) and (2) of the

Adoption Act.[4]  Following the hearing, the court granted the petition  finding

CYS had presented clear and convincing evidence that termination was

appropriate under sections 2511(a)(1), (2), and (b),[5] and changed the goal

to adoption.

_____

[4] 23 Pa.C.S.A. §§ 2101-2938.

[5] Section 2511 provides, in relevant part:

> **(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control[,] or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect[,] or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing[,] and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

*(Footnote Continued Next Page)*

Father filed timely notices of appeal and contemporaneous Pa.R.A.P. 1925(a)(2)(i) concise statement of errors complained of on appeal. He presents the following issue(s) for our review:

1. The trial court abused its discretion and/or erred as a matter of law in finding that termination of Father's parental rights best serves the welfare of the Child when Father continued to have a meaningful relationship and connection with Child.

2. The trial court abused its discretion and/or erred as a matter of law in changing the permanency goal to adoption when CYS failed to make reasonable efforts to support reunification with Father.

Appellant's Brief, at 8 (reordered and reworded for ease of disposition).

In cases involving termination of parental rights, "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child." *In re Z.P.*, 994 A.2d 1108, 1115 (Pa. Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa. Super. 2009)). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re B.L.W.*, 843 A.2d 380, 383 (Pa. Super. 2004) (en banc) (internal citations omitted).

[U]nlike trial courts, appellate courts are not equipped to make [] fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an

---

23 Pa.C.S.A. §§ 2511(a)(1), (2), (b).

opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second[-]guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826–27 (Pa. 2012) (citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

After our review, we find no error or abuse of discretion in the trial court's determination that CYS established, by clear and convincing evidence, that termination was proper under section 2511(a)(2) and (b).[6]

Section 2511(a)(2) requires the moving party to prove three factors by clear and convincing evidence: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect[,] or refusal caused the child to be without essential parental care, control[,] or subsistence; and (3) that the causes of the incapacity, abuse, neglect[,] or refusal cannot or will not be remedied." *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008) (citation omitted). "The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; those grounds may also

_____

[6] This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, *supra* at 384.

include acts of refusal as well as incapacity to perform parental duties." *Id.* (citation omitted). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Matter of Adoption of M.A.B.,* 166 A.3d 434, 443 (Pa. Super. 2017) (citation omitted). While incarceration alone is not sufficient to support termination, "incarceration will certainly impact a parent's capability of performing parental duties, and may render a parent incapable of performing parental duties under [section 2511](a)(2)." *Interest of K.M.W*., 238 A.3d 465, 474 (Pa. Super. 2020) (en banc) (citation and emphasis removed). An incarcerated parent is expected to "take affirmative steps to support a parent-child relationship" and "utilize whatever resources are available to him while in prison in order to foster a continuing close relationship with his children." *In re E.A.P.*, 944 A.2d 79, 83 (Pa. Super. 2008). Additionally, the length of the confinement can be considered as "highly relevant" in a Section 2511(a)(2) analysis. *In re Adoption of S.P.*, 47 A.3d at 830.

Under section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would

destroy an existing, necessary[,] and beneficial relationship. When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, [s]ection 2511(b) does not require a formal bonding evaluation.

*In re Z.P.*, *supra* at 1121 (internal citations omitted).

Here, Father failed to take meaningful steps to engage in services offered by CYS. Additionally, his housing situation was unclear. Father was given time to complete a threat of harm evaluation[7] and he inexplicably cancelled the appointment. While Father did engage in weekly visits, but missed a significant amount of scheduled telephone calls and failed to attend any of Child's medical appointments after he was released from incarceration.

Father's lack of cooperation with CYS and minimal compliance with his permanency plan goals is evidenced by the following: (1) Father's cancellation of a threat of harm evaluation; (2) Father's failure to comply with the ICPC procedures, causing the ICPC case to close; (3) Father's failure to participate in parenting classes; and (4) Father's failure to provide any financial contribution to Child's care. Further, Father's own witness, paternal aunt, conceded that Father alone cannot care for Child. *See* N.T. Termination Hearing, *supra* at 75.

Moreover, Child has been in placement for approximately 17 months, since October of 2022, and Father has been incarcerated for 11 of those

_____

[7] Father has a criminal history of drugs, violent offenses, as well as domestic violence. Father was released from jail after serving a one-year sentence for a robbery conviction.

- 10 -

months, the majority of the life of this case. Although CYS noted that Father and Child were rebuilding their relationship, it was unclear if Father "understands [C]hild's emotional and mental needs." *See* Court Report for Permanency Review Hearing, 2/27/24. At the October 3, 2023 permanency review hearing, the trial court reinforced to Father the importance of his participation in the next hearing and the necessity in making efforts towards reunification as he was about to be released from incarceration; however, as of the date of the filing of the termination petition, Father had not made significant efforts to have Child returned to his care. The record demonstrates that Father's repeated and continued incapacity has caused Child to be without essential parental care, control, or subsistence necessary for her physical or mental well-being and the conditions and causes of Father's incapacity cannot or will not be remedied. We, thus, discern no abuse of discretion by the trial court in concluding that CYS established by clear and convincing evidence that termination was proper under section 2511(a)(2).

With respect to section 2511(b), the record established that Child is thriving with Foster Family, has a "fun and loving" relationship with Foster Family's youngest daughter, who is the same age as Child, *see* Court Report for Permanency Review Hearing, 12/12/23, is developmentally and educationally on track, is developing friendships with other children in kindergarten and at church, has gone on family vacations with Foster Family, and has expressed that she likes living with Foster Family. The trial court emphasized that Foster Family has provided a sense of permanency to Child,

- 11 -

that Child has "bonded with [Foster Family]" and that Foster Family is "actively involved in advancing [Child's] best interests in obtaining necessary trauma and therapeutic services to further [] Child's well-being." Pa.R.A.P. 1925(a) Opinion 7/26/24, at 10. The record supports the court's determination that termination of Father's parental rights will best serve Child's developmental, physical, and emotional needs and welfare. ***See*** 23 Pa.C.S.A. § 2511(b).

Further, the record establishes that CYS's efforts at providing services to Father were reasonable, that Father was unable to meet his goals, and that after the goal was changed from reunification to adoption, CYS's focus on permanency planning for Child with Foster Family was appropriate. ***See In re S.C.B.***, 990 A2d 762 (Pa. Super. 2010). ***See also S.P.***, ***supra***. Although the court acknowledged Father and Child were working on their relationship, the fact remains that Father is unable, on his own, to provide parental care for Child. Foster Family is an adoptive resource, and permanency in Child's life must take precedence here. ***See In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011) ("[M]ere existence of an emotional bond does not preclude the termination of parental rights." ). ***See also In re T.S.M.***, 71 A.3d 251, 268 (Pa. 2013) (trial court must also examine any pre-adoptive home and any bond between child and foster parents).

Orders affirmed.[8]

---

[8] Given our decision to affirm the trial court's termination decree, any challenge to the goal change order is moot. ***See Interest of D.R.-W.***, 227 A.3d 905, 917 (Pa. Super. 2020).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>12/5/2024</u>